IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SAMAR AKINS, | |
| Plaintiff, | **4:23CV3205** |
| vs. | |
| SYSCO LINCOLN INC., | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the court on Defendant's motions for partial dismissal and summary judgment. (Filing No. 5; Filing No. 41.) For the reasons explained below, Defendant's partial Motion to Dismiss will be denied as moot, and Defendant's Motion for Summary Judgment will be granted.

## BACKGROUND

Plaintiff, Samar Akins (Akins), filed this action in the District Court of Lancaster County, Nebraska on September 19, 2023, seeking damages for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1964, *et seq* and the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1104, by Defendant, Sysco Lincoln, Inc. (Sysco). (Filing No. 1.)    Akins alleged he was denied employment opportunities because of his race and in retaliation for filing a discrimination case against Sysco and other discrimination cases against additional corporations. (Filing No. 1; Filing No. 1-1.)  After Sysco removed the case to this Court, it answered and filed a partial motion to dismiss. (Filing No. 1; Filing No. 4; Filing No. 5.)

Following Akins' response to Sysco's motion to dismiss, which included material outside the allegations contained in his Complaint, Sysco filed a motion for summary judgment. (Filing No. 41.)  Sysco Argues Akins' complaint must be dismissed because he failed to exhaust his administrative remedies with respect to all his claims, and because Akins cannot a establish prima facie case of race discrimination and retaliation. (Filing No. 43.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1).  If the non-moving party opposes the motion, that party must "file a brief and a separate statement of concise responses to the moving party's statement of material facts." NECivR 56.1(b)(1)(A).  The separate statement "should consist of separate numbered paragraphs corresponding to the numbered paragraphs in the movant's separate statement of facts, and must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies." *Id.*  "Each response must clearly state that the asserted fact is: (i) undisputed, (ii) disputed, or (iii) undisputed in part and disputed in part." NECivR 56.1(b)(1)(B).  "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." *Id.;* see also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Sysco submitted a statement of material facts in accordance with the court's Local Rules. (Filing No. 42.)  Further, Sysco submitted evidence that was properly authenticated by affidavit or sworn deposition testimony. (Filing No. 44.)  Akins did not respond to Sysco's statement of material facts.  Although he submitted the same "Motion to Deny Defendant's Motion for Summary Judgment" twice, Akins failed to present any procedurally correct or legally sufficient opposition to Sysco's motion. (Filing No. 47; Filing No. 50.)  To the extent Akins submitted a statement of facts, it was not properly authenticated by affidavit or sworn deposition testimony. (Filing No. 47; Filing No. 50.)  In view of the filings as presented in the record, the Court considers Sysco's motion fully submitted and adopts the following undisputed material facts, as set forth by Sysco. (Filing No. 42.)

## RELEVANT UNDISPUTED FACTS

Akins applied to work at Sysco in September of 2022, for the role of Outbound Selector. (Filing No. 42 at 1.) After submitting an online application, Akins had a phone interview followed by an in-person interview with Warehouse Director Lucas Sullivan (Sullivan), the hiring manager. (Filing No. 42 at 1-2.)

According to Akins, before Sullivan interviewed him, a "white lady from HR" approached Sullivan and told him not to hire Akins because he files lawsuits. (Filing No. 42 at 2.) Sullivan told Akins he believed Akins was "a great candidate for the job." (Filing No. 42 at 2.) At the conclusion of the interview, Sullivan submitted paperwork recommending Akins for hire. (Filing No. 42. at 2.)

On October 25, 2022, Akins filed a Charge of Discrimination alleging Sysco did not hire him due to his race and prior protected activity. (Filing No. 42 at 2.) At the time he filed his Charge, Akins had not received any information suggesting Sysco had decided not to hire him. (Filing No. 42 at 2.)

On December 5, 2022, Chavon Morrison, a recruiter for Sysco, contacted Akins and offered him a job with Sysco, conditioned on Akins passing a criminal background check and drug screen. (Filing No. 42 at 2.) Morrison told Akins, "[t]hey recommended you for hire months ago, but they failed to send it – send it over to her [Morrison] until just now." (Filing No. 42 at 2-3.)

Akins accepted the conditional offer of employment. (Filing No. 42 at 3.) As with all individuals offered employment with Sysco, Akins had to take and pass a drug test as a condition of his employment. (Filing No. 42 at 3.) When Akins arrived for the drug test scheduled for December 7, 2022, he could not initially enter the building until Nancy Moravec (Moravec), Occupational Nurse Health Manager, let him in. (Filing No. 42 at 3.) Moravec informed Akins she would be conducting a urinary analysis. (Filing No. 42 at 3.)

Akins began licking his lips and wiping his mouth with his hand to make sure he didn't have any "white stuff" on his mouth. (Filing No. 42 at 3.) Moravec asked Akins what he was doing, and Akins told her he was worried about white residue from Tylenol he had taken before reporting to the drug test. (Filing No. 42 at 3.) Akins explained he had chewed up five Tylenol PMs, "so that's a lot of white stuff." (Filing No. 42 at 3.)

After Moravec indicated they should start the test, Akins expressed frustration with her because she questioned him about licking his lips. ([Filing No. 42 at 4.](#))  He raised his voice at Moravec and told her she did not have the right to ask questions. ([Filing No. 42 at 4.](#))  Then Akins asked Moravec to ger her supervisor. ([Filing No. 42 at 4.](#))  Moravec asked Akins to wait in another area and then reached out to members of Sysco's Human Resources team. ([Filing No. 42 at 4.](#))  Although no one from Human Resources was immediately available, Moravec was able to reach Sysco's Vice President of Operations, Roger Ginestet (Ginestet). ([Filing No. 42 at 4.](#))

Moravec returned to Akins with Ginestet and Sullivan. ([Filing No. 42 at 4.](#))  Ginestet explained to Akins that, as Sysco's nurse, Moravec had the right to ask questions if she thought there was a potential health issue. ([Filing No. 42 at 4.](#))  Akins responded that he had "a legal right to work here." ([Filing No. 42. at 4](#))

Akins continued to raise his voice and said Moravec was disrespectful because she asked Akins if he was okay. ([Filing No. 42 at 4.](#))  Moravec then said she did not feel comfortable conducting Akins' urinary analysis at that time. ([Filing No. 42 at 4.](#))  At that point, Ginestet told Akins to leave. ([Filing No. 42 at 4.](#))

Akins believes Sysco discriminated against him because, "I'm black. They white." ([Filing No. 42 at 5.](#))  Akins thinks Sysco discriminated against him because, "I mean, just the fact that they're all white, you know.  Every – every person that I've saw that work for the company and every person that I have interacted with has been all white." ([Filing No. 42 at 5.](#))  Akins believes "everything" Ginestet said to him was discriminatory "because he was white." ([Filing No. 42 at 5.](#))

According to Akins, "Nebraska is a racist, conservative, anti-black state." ([Filing No. 42 at 5.](#))  Because of his involvement in activism, Akins believes the average employer in Lincoln, Nebraska, knows who he is. ([Filing No. 42 at 5.](#))  At the time of their encounters with Akins, Sullivan, Moravec, and Ginestet did not know, or know of Akins, and they were not aware he had filed legal claims of discrimination against other companies. ([Filing No. 42 at 5.](#))

According to Akins, he has "filed dozens of charges." ([Filing No. 42 at 5.](#))  He has filed charges alleging race discrimination against an unnamed telemarketing company, a company called Express, a company called Excel, Kawasaki, a construction company, Toppers pizza chain,

a petition company, four charges against IHOP, and "may be others." (Filing No. 42 at 5-6.) Akins says he knew these companies discriminated against him based on his race "[b]ecause they was white. First and foremost because they was white." (Filing No. 42 at 6.)

Before Akins applied to work at Sysco in 2022, he was self-employed as a dog breeder. (Filing No. 42 at 6.) Akins stopped his self-employment as a dog breeder because of "racism." (Filing No. 42 at 6.) Akins did not work during COVID because of "racism." (Filing No. 42 at 6.)

Akins has sued the Nebraska Equal Opportunity Commission, a federal district court, the Nebraska Court of Appeals, and the Nebraska Supreme Court because he believes they are racist. (Filing No. 42 at 6.) Akins also sued the governor, the mayor, and the police department. (Filing No. 42 at 6.) He also sued or filed a discrimination charge against a lawyer's office because the office did not take his case. (Filing No. 42 at 6.) According to Akins, he has filed "probably a hundred or two hundred" lawsuits in his life. (Filing No. 42 at 6.)

Akins believes that his deposition in this action was an act of racism. (Filing No. 42 at 7.) He has been belligerent with this "Court throughout this lawsuit, including but not limited to implying that Judge DeLuca's rulings on a discovery motion were racist and asking Judge DeLuca for her ethnicity and age." (Filing No. 42 at 7.)

Sysco hired twenty other Outbound Selectors in December, 2022, for the position to which Akins applied. (Filing No. 42 at 7.) Of the twenty hired, seven self-identified as "Black or African American, and only five self-identified as "White." (Filing No. 42 at 7.) Sullivan was the hiring manager for all the Outbound Selectors hired in December, 2022. (Filing No. 42 at 7.)

## DISCUSSION

### Summary Judgment Standard

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir.

2011) (quotation omitted). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.*

"On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* "In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit." *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quotation omitted). "The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmovant." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011) (quotation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (quotation omitted).

**Discrimination and Retaliation Claims under Title VII and NFEPA**

Title VII of the Civil Rights Act of 1964, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The NFEPA is patterned after Title VII and likewise prohibits racial discrimination in the workplace. *Ludlow v. BNSF Ry. Co.*, No. 4:12CV3113, 2013 WL 3872930, at *17 (D. Neb. July 24, 2013). Claims for discrimination and retaliation under Title VII and NFEPA are analyzed under the same framework. See *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005).

Summary judgment may be entered in a Title VII action "if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir.1999). To survive a motion for summary judgment, a plaintiff can demonstrate unlawful discrimination through either direct or indirect evidence. See *Gibson v. American Greetings Corporation*, 670 F.3d 844, 853 (8th Cir. 2012). "To prove intentional discrimination through direct proof, a plaintiff must establish 'a specific link

6

between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'" *Id.* (quoting *Putman v. Unity Health Sys.,* 348 F.3d 732, 735 (8th Cir.2003). Claims premised on indirect evidence are analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Id.*

Because Akins did not present direct evidence of race discrimination, his claims are analyzed under the *McDonnell Douglas* burden-shifting framework. Under this framework, Akins bears the initial burden of proving a prima facie case of discrimination. See *Gibson,* 670 F.3d at 853. "To establish a prima facie case for race discrimination, a plaintiff 'must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently).'" *Id.* (quoting *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir.2010)).

If Akins establishes a prima facie case, a rebuttable presumption of discrimination arises and the burden shifts to Sysco to articulate a legitimate nondiscriminatory reason for its employment decision. See *Gibson,* 670 F.3d at 854. If Sysco articulates a nondiscriminatory reason, the burden returns to Akins to show that the proffered reason is pretextual. *Id.* However, the ultimate burden of persuasion remains with Akins throughout the case. *Id.*

Sysco argues summary judgment is appropriate because Akins fails to establish a prima facie case of race discrimination as to the alleged decision not to hire him before he filed his only charge of discrimination on October 25, 2022, and as to the hiring decision on December 7, 2022, which Sysco contends is not properly before the Court because Akins did not properly exhaust his administrative remedies. (Filing No. 43 at 4-6.) The record in this matter shows that after Akins filed his discrimination charge on October 25, 2022, he inquired with the executive director of the Nebraska Equal Opportunity Commission about whether he needed to amend the charge to add additional details. (Filing No. 7-2.) The executive director indicated it was not necessary because the issue of failure to hire was in the charge, and "[t]he investigation encompassed all that transpired during the protracted hiring process." (Filing No. 7-2.) Further, "At no time did Sysco Lincoln, Inc. indicate that the charge needed to be amended to investigate every specific incident in the failure to hire action." (Filing No. 7-2.) The executive director made the final determination

on the issue of failure to hire, and it "was based on all actions taken during the full failure to hire process." (Filing No. 7-2.)

Given the content in the record, the Court's consideration of the issues is based on all actions taken by Sysco during the entire hiring process. For the reasons stated below, Akins discrimination claim fails because he has not established a prima facie case of race discrimination.

As to Akins' allegations regarding Sysco's decision not to hire him before October 25, 2022, he fails to establish a prima facie case of race discrimination because he has presented no evidence he suffered an adverse employment action, and he has not presented any evidence of circumstances giving rise to an inference of discrimination. Indeed, it is undisputed Sysco made a conditional offer of employment to Akins on December 5, 2022.

Akins also cannot establish a prima facie case of race discrimination as to the December hiring decision because he presents no evidence to show any circumstance giving rise to an inference of discrimination. Even when the evidence in the record is viewed in the light most favorable to Akins, there is nothing in the record from which the Court can infer that Akins' race played any role in Sysco's decision to end the conditional offer of employment following Akins' actions when he reported for the urinary analysis.

Akins applied for an Outbound Selector role at Sysco in September of 2022. (Filing No. 42 at 1.) After a telephone and in-person interview, Sullivan recommended that Akins be hired. (Filing No. 42 at 2.) On December 5, 2022, Sysco offered Akins a job contingent on the successful completion of a criminal background check and drug test. (Filing No. 42 at 2.)

Akins admitted he chewed and consumed five Tylenol PMs before he arrived for the drug screening. (Filing No. 42 at 3.) Akins' behavior and statement that he was licking his lips and wiping his face to make sure he did not have any "white stuff" on his face raised concern by Moravec based on her medical experience, which caused Akins to become frustrated with her. (Filing No. 42 at 4.) Akins then yelled at Moravec and told her to get a supervisor. (Filing No. 42 at 4.) When Moravec called her supervisors, Akins became agitated and continued using a raised voice. (Filing No. 42 at 4.) Based on Akins' behavior, Sysco's determination to cancel the drug test and not move forward with employment is justified. (Filing No. 42 at 4.)

Akins fails to point to any words, actions, or indications to support his claim that Sysco's

decisions were related to his race.  Sysco offered a position to him after two interviews. (Filing No. 42 at 2.)  Of the twenty people Sysco hired for the position offered to Akins, only five were white, and seven were African American. (Filing No. 42 at 7.)

There is no evidence that any white employees who behaved erratically at their drug tests subsequently proceeded to work for Sysco.  Furthermore, the evidence is undisputed that Sysco hired multiple black employees in the same time frame and position for which Akins applied.  The difference between Akins and others in his same protected category is that Akins' behavior gave Sysco reason not to proceed with his employment.

Akins has failed to substantiate his allegations of discrimination with any evidence that would permit a finding in his favor.  Although Akins is a member of a protected class, there is no evidence to show that any circumstances existed giving rise to an inference of discrimination. Because Akins has not established a prima facie case of race discrimination on his failure to hire claim, Sysco is entitled to judgment as a matter of law.

Akins also asserts a claim for unlawful retaliation against Sysco for its failure to hire him in violation of Title VII and NFEPA.  As with his discrimination claim, Sysco argues it is entitled to summary judgment because Akins fails to present evidence to support a prima facie case of retaliation. (Filing No. 43 at 8-10.)

Title VII's antiretaliation provision forbids employer actions that " 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.' " *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). The NFEPA similarly forbids an employer from taking adverse action against an employee who opposed a practice that is unlawful under federal or Nebraska law. *See* Neb. Rev. Stat. § 48-1114. "Retaliation claims under the NFEPA are governed by the same standard as claims for retaliation under Title VII." *Tremaine v. Goodwill Indus., Inc.*, No. 8:16CV488, 2017 WL 394490, at *2 (D. Neb. Jan. 27, 2017).

To establish a prima facie retaliation claim under Title VII or NFEPA, a plaintiff must demonstrate (1) he engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) the engagement in the protected activity was the but-for cause of the adverse

9

employment action. *Warren v. Kemp,* 79 F.4th 967, 973 (8th Cir. 2023).  As with a claim for discrimination, where there is no direct evidence of retaliatory practice, the *McDonnell Douglas* framework applies. *See Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016).

Akins fails to establish a prima facie case of retaliation regarding Sysco's decision not to hire him before October 25, 2022, because he has presented no evidence he suffered an adverse employment action, and he cannot establish a causal connection between protected activity and any adverse employment action.

Although Akins asserts that in his initial in-person interview, an unnamed "white lady from HR" told Sullivan not to hire Akins because he files lawsuits, Sullivan went forward with the interview and told Akins he was a great candidate. (Filing No. 42 at 2.)  Sullivan recommended Akins for the position, and then Sysco made a conditional offer of employment to Akins on December 5, 2022. (Filing No. 42 at 2.)  Accordingly, even assuming the unidentified white woman was aware of Akins' prior lawsuits, Sysco clearly did not retaliate against Akins on his alleged grounds.

Akins also fails to establish a prima facie case of retaliation as to the December hiring decision.  When Akins attended his appointment for the drug test, it is undisputed he behaved erratically and combatively with the nurse and Sysco leadership. (Filing No. 42 at 4.)  There is no evidence in the record that suggests the decision not to move forward with the hiring process had anything to do with any protected conduct.  Thus, Akins fails to establish a prima facie retaliation claim, and Sysco has demonstrated a legitimate, non-discriminatory reason for revoking its offer of employment.  Consequently, Sysco is entitled to summary judgment as to Akins' retaliation claim.

Even if Akins could establish a prima facie case of race discrimination or retaliation, he must produce evidence sufficient to create a genuine issue of material fact that Sysco's explanation is a mere pretext for unlawful discrimination or retaliation, and he has failed in this burden.  Akins offers no evidence that Sysco's hiring decisions throughout the process were influenced by race or that but for his lawsuits or filing the charge against Sysco, Sysco's decisions would have been different.  Accordingly, Sysco's motion for summary judgment is granted, and Akins' complaint is dismissed.

10

Plaintiff also filed a Rule 59 Motion Amendment of Judgement, (Filing No. 57). Based on the body of the document, the court takes the motion as an Objection to the Magistrate Judge's Order, (Filing No. 56), which addressed Plaintiff's Motions for Sanctions, (Filing No. 48; Filing No. 49). On review of a decision of a magistrate judge on a non-dispositive matter, the district court may set aside any part of the magistrate judge's order that it finds clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A decision is "clearly erroneous" when, although there is evidence to support it, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996) (quotation omitted). A decision is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008) (quotation omitted). The court has reviewed the magistrate judge's order, and it is not clearly erroneous. Plaintiff's motion is denied.

IT IS THEREFORE ORDERED:

1. Defendant's partial Motion to Dismiss (Filing No. 5) is denied as moot.
2. Plaintiff's Motion (Filing No. 57) is denied.
3. Defendant's Motion for Summary Judgment (Filing No. 41) is granted.
4. Judgment will be entered by a separate document.

Dated this 3rd day of July, 2025.

BY THE COURT:

Susan M. Bazis
United States District Judge